# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Peter Allan, Sr.,

        Plaintiff,

        v.

Cal Ludeman, Dennis Benson, Michael
Tesneer, Gregg Carlson, Kevin Moser,
Scott Sutton, Dr. David Paulson,
Sharon Barney, Dan Hilleren, Joan
Fabian, James Olson, Joel Korby, Mary
Lind Schafer, Marie Skalko, Sue
Creager, Kerri Anderson, and Connie
Sells, and Alan Eckert, Health Service
Staff Members, sued in their individual
and official capacities,

        Defendants.

Civ. No. 10-176 (ADM/JJK)

**REPORT AND RECOMMENDATION**

---

Peter Alan Sr., 111 Highway 73, Moose Lake, Minnesota, 55767, Plaintiff, *pro se.*

P. Kenneth Kohnstamm, Assistant Minnesota Attorney General, counsel for
Defendants.

---

JEFFREY J. KEYES, United States Magistrate Judge

      Plaintiff, a patient at the Minnesota Sex Offender Program ("MSOP"), in

Moose Lake, Minnesota, is attempting to sue various employees of the State of

Minnesota under 42 U.S.C. § 1983, for allegedly violating his federal

constitutional rights. He is also attempting to bring supplemental state tort-law

claims against some of the named Defendants. Plaintiff's claims are set forth in

his Amended Complaint. (Doc. No. 6.)

The named Defendants have filed a motion seeking to have this action dismissed, in its entirety, pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 16.) Defendants contend that Plaintiff's Amended Complaint fails to state any cause of action on which relief can be granted. Defendants' motion to dismiss has been fully briefed by the parties, and the matter has been referred to the undersigned Magistrate Judge for a for a Report and Recommendation under 28 U.S.C. § 636 and D. Minn. Loc. R. 72.1. For the reasons discussed below, this Court recommends that Defendants' motion to dismiss be granted in part, and denied in part.

## BACKGROUND

Plaintiff has been found to be a "sexually dangerous person" and a "sexual psychopathic person" under Minnesota law. *In re Civil Commitment of Allan*, No. A09-1607, 2010 WL 608028, at *1 (Minn. Ct. App. Feb. 23, 2010). As a result, Plaintiff has been civilly committed to the Minnesota Sex Offender Program, ("MSOP"), located in Moose Lake, Minnesota. He will be detained there for an indeterminate term. *Id*.

The genesis of Plaintiff's current lawsuit is fairly simple and straightforward. He alleges that on June 21, 2009, he was transferred from a building referred to as "the Annex" to a building referred to as the "main building." The transfer was made so that Plaintiff could attend Native American Religious Ceremonies, which apparently were conducted at the main building. Plaintiff alleges that during the

transfer process, he was in the custody of the Minnesota Department of Corrections ("DOC"), rather than MSOP. (The DOC operates a prison facility in Moose Lake, which apparently is near, and perhaps somewhat integrated with, MSOP's facilities.) Plaintiff further alleges that although he was in DOC custody, he was transferred in a transport van driven by a MSOP staff member, Defendant Alan Eckert. (Am. Compl. ¶¶ 1-3.[1])

In the first paragraph of the "Statement of Claims" section of the Amended Complaint, Plaintiff alleges the following:

> On June 21, 2008,[2] at the direction of Department of Corrections defendants Dan Hilleren and Joan Fabian, plaintiff was forced to do an unclothed intrusive visual body strip search before and after leaving the Annex at the Moose Lake Prison facility. In order for plaintiff to go to his Native American Ceremonies, which are held at MSOP's main building, plaintiff was forced to submit to a full unclothed visual body search violating Plaintiff's Fourth Amendment rights.

(*Id.* ¶ 1.) Plaintiff further alleges that while he was in the transport van being driven by Defendant Eckert, "the vehicle hit a pole." (*Id.* ¶ 3.) According to the Amended Complaint, Defendant Eckert "wasn't watching where he was going and plaintiff's head snapped violently backwards, injuring him and he has had severe headaches since the date of the incident." (*Id.*) Plaintiff allegedly was "bound,

---

[1] The numbered paragraphs of the Amended Complaint begin on the sixth page of that pleading, under the heading "Statement of Claims."

[2] Based on the other allegations in the Amended Complaint, it appears that Plaintiff meant June 21, 200<u>9</u>.

chained and shackled" when the accident occurred, and he was therefore "unable to protect [himself]." (*Id*.) Plaintiff claims that the accident occurred because "defendant Eckert was negligent in his duties." (*Id*.)

Most of the rest of Plaintiff's Amended Complaint pertains to the medical care that he allegedly received (or did not receive), for the injuries that he allegedly sustained from the transport-van accident. Plaintiff claims that he sustained a "whiplash" injury during the accident, which has caused him to suffer headaches, neck soreness, and related maladies. He further claims that various MSOP employees negligently or deliberately refused to provide proper medical care for his alleged injuries. The specific accusations made against each of those individual employees is discussed more fully below. (*See infra* pp. 20-29.)

Giving Plaintiff's *pro se* pleading the benefit of liberal construction, this Court finds that he is attempting to bring the following causes of action:

(1) Plaintiff is attempting to sue Defendants Dan Hilleren and Joan Fabian for violating his federal constitutional rights under the Fourth Amendment, by directing their subordinates to "strip search" Plaintiff on June 21, 2009;

(2) Plaintiff is attempting to sue Defendants Cal Ludeman, Dennis Benson, Gregg Carlson, and Kevin Moser, for violating his constitutional rights under the Fourth and Fourteenth Amendments, because Plaintiff has been physically restrained while in MSOP custody;

(3) Plaintiff is attempting to sue numerous Defendants (specifically

4

identified hereafter), for allegedly violating his federal constitutional rights by being deliberately indifferent toward his need for medical care for the injuries he allegedly sustained from the transport-van accident;

(4) Plaintiff is attempting to sue numerous Defendants for negligence and/or medical malpractice, because they allegedly failed to provide proper medical care and treatment for the injuries he allegedly sustained in the transport-van accident; and

(5) Plaintiff is attempting to sue Defendant Alan Eckert for common-law negligence, because he allegedly caused the transport-van accident and Plaintiff's resulting injuries by driving carelessly.

This Court finds that some of the foregoing claims have been adequately pleaded, and can withstand Defendants' motion to dismiss. However, several of Plaintiff's putative causes of action are not supported by the facts alleged in his Amended Complaint, and those claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## DISCUSSION

### I.  Standard of Review

A claim presented in a civil complaint will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), if the claim is not supported by sufficient factual allegations to state a cause of action on which relief can be granted.  To state a cause of action that will survive a Rule 12(b)(6) motion, a complaint must allege a set of historical

facts, which, if proven true, would entitle the plaintiff to some legal redress against the named defendant(s) under some established legal theory. In short, "the complaint must allege facts, which if true, state a claim as a matter of law." *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

When deciding a Rule 12(b)(6) motion to dismiss, a court assumes all facts alleged in the complaint are true, and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

"When ruling on a motion to dismiss under Rules 12(b)(6) . . . , a district court generally may not consider materials outside the pleadings." *Noble Sys. Corp. v. Alorica Central, LLC*, 543 F.3d 978, 982 (8th Cir. 2008). The Court "may, however, consider some public records, materials that do not contradict the complaint, or materials that are 'necessarily embraced by the pleadings.'" *Id.* (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)).[3]

---

[3] In this case, Plaintiff has supplemented his opposition to Defendants' motion to dismiss by filing a declaration. (Doc. No. 28.) This Court has reviewed that declaration, and finds that it does not add any significant facts beyond those that have already been pleaded in Plaintiff's Complaint. Therefore, while the declaration has been accepted and considered, it does not affect the resolution of Defendants' motion to dismiss.

*Pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (*per curiam*).  However, even a *pro se* complaint must allege facts, and not just bare, unsupported, legal conclusions.  *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) ("Although it is to be liberally construed, a *pro se* complaint must contain specific facts supporting its conclusions."); *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995) ("At the very least . . . the complaint must contain *facts* which state a claim as a matter of law and *must not be conclusory*.") (emphasis added).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level."  *Id*. at 555.

"[I]n fulfilling its duty to liberally construe a civil-rights pleading," a court is not required to "divine the litigant's intent and create claims that are not clearly raised," nor is the court required to "read or construct an argument into a civil-rights pleading."  *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 840 (8th Cir. 2004).  Federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint."  *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004).

To successfully plead a § 1983 civil rights cause of action, as Plaintiff is attempting to do here, a complainant must allege a set of historical facts, which, if proven true, would demonstrate that the named defendant(s) violated the complainant's federal constitutional rights while acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Furthermore, "[l]iability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights" protected by the Constitution. *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *Speed v. Ramsey County*, 954 F. Supp. 1392, 1397 (D. Minn. 1997) (same). In other words, civil rights claimants must plead facts showing each defendant's *personal* involvement in alleged constitutional wrongdoing. *Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999); *see also Beck v. LaFleur*, 257 F.3d 764, 766 (8th Cir. 2001) (upholding summary dismissal of civil rights claims, because plaintiff's complaint "failed to allege sufficient personal involvement by any of defendants to support such a claim"). In sum, when a plaintiff seeks relief under § 1983, his complaint must set forth specific factual allegations showing what each named defendant allegedly did, or failed to do, while acting under color of state law, which purportedly violated the plaintiff's federal constitutional rights.

## II. Analysis

### A. Strip-Search Claim

In the first paragraph of the "Statement of Claims" section of the Amended Complaint, Plaintiff alleges that Defendants Dan Hilleren and Joan Fabian

violated his constitutional rights by directing their subordinates to subject him to "an unclothed intrusive visual body strip search." (Am. Compl. ¶ 1.) Defendants contend that this claim should be summarily dismissed pursuant to Rule 12(b)(6), because "[s]uch searches have been found constitutionally permissible in . . . MSOP." (Doc. No. 17, Defs.' Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Mem.") 10, n. 10.) Defendants cite *Serna v. Goodno*, 567 F.3d 944 (8th Cir.), *cert. denied*, 130 S.Ct. 465 (2009), to support their motion to dismiss Plaintiff's "strip search claim."

*Serna*, however, does *not* support the broad proposition that all strip searches conducted at MSOP are "constitutionally permissible." To the contrary, *Serna* clearly shows that strip searches at MSOP are permissible only if they satisfy the standard explicitly mandated by the Fourth Amendment – i.e., only if they are not "unreasonable." Thus, in *Serna*, the Court carefully examined all of the circumstances surrounding the strip search at issue, in order to determine whether that particular search was "reasonable." Applying the Supreme Court's decision in *Bell v. Wolfish*, 441 U.S. 520 (1979), the Eighth Circuit concluded that a "balancing test" should be used to determine whether a strip search of a MSOP patient was "reasonable" under the Fourth Amendment. 367 F.3d at 949-51. The "balancing-test factors" include the proffered justification for the search, and the scope and manner of the search. *Id*. at 951, 953.

*Serna* was before the Court of Appeals following an appeal from a district-

9

court ruling on a summary-judgment motion. As a result, the court was able to apply the "balancing test" (to determine the reasonableness of the search at issue), based on a significant evidentiary record. Upon reviewing that record, the court reached the following conclusion:

> [W]hile we hold that the specific facts of Serna's case present a close question of constitutional law, the searches were not unreasonable. The defendants' security and treatment concerns are genuine and serious; the searches, while invasive, were conducted privately, safely, and professionally; and the facility was reacting to a recurring problem. We view Serna's case as an outer limit under the *Bell* test and, as such, caution facility administrators to recognize that courts' deference under *Bell* is not without limits.

*Id*. at 955-56. *Serna* clearly indicates that strip searches conducted at MSOP facilities may or may not be reasonable, and thus may or may not be constitutional, depending on the circumstances.

In this case, Plaintiff alleges that Defendants Hilleren and Fabian directed their subordinates to subject him to a strip search. Defendants might be able to present evidence (in a summary-judgment motion or at trial), which will show that the alleged search was "reasonable" in light of the balancing-test factors prescribed by *Bell* and *Serna*. As of now, however, this Court can only look at the Amended Complaint. Based on the limited allegations in the Amended Complaint, and nothing more, this Court cannot conclude that the alleged strip search was "reasonable" and therefore constitutional. The Court cannot just assume the alleged search was "reasonable" under the circumstances. Thus,

this Court recommends that Defendants' motion be denied with respect to

Plaintiff's Fourth Amendment claims against Defendants Fabian and Hilleren.[4]

### B. Unreasonable-Seizure Claim

In several paragraphs of the Amended Complaint, Plaintiff alleges that he

was shackled and "black boxed."[5]  The first such paragraph reads as follows:

---

[4]  The present resolution of Plaintiff's strip-search claim is consistent with *Beaulieu v. Ludeman*, Civil No. 07-1535 (JMR/JSM), 2008 WL 2498241 (D. Minn. June 18, 2008). In that case, which also involved a Fourth Amendment strip-search claim brought by a MSOP patient, the Court concluded that the patient's claim could not be dismissed pursuant to Rule 12(b)(6).  The Magistrate Judge explained that –

> While defendants may ultimately prove that strip searches of Program detainees before and after transport to and from the facility and after contact visits is reasonable, their motion to dismiss plaintiffs' strip search claim must be denied for two reasons.  First, for the purpose of a motion to dismiss, this Court cannot look beyond plaintiffs' Complaint, and as written, it states a viable claim.  Second, no facts have been developed to date, much less submitted to the Court, by any party that speak to the scope of the search, the manner it was conducted, the justification for the search, and the place it was conducted.  *See generally, Shain v. Ellison*, 273 F.3d 56, 62-66 (2d Cir. 2001) (holding that a blanket strip search policy at county jail violated Fourth Amendment).  Stated otherwise, this Court does not have before it any facts to assist it in evaluating the factors necessary to determine if the alleged blanket strip search policy in this case is appropriate.  As such, defendants' motion to dismiss plaintiffs' Fourth Amendment claims should be denied.

2008 WL 2498241 at *12.

[5]  Plaintiff has described the "black box" procedure as follows:

> The black box [is] used in all transports outside of the facility which are placed over the handcuffs placed on patients.  The black box is then locked with a key, so that the handcuffs are not visible.  A waist chain is then applied, which goes around the waist of plaintiff, and is looped through the belt loops of plaintiff's pants, and locked in place on the black box.  Ankle shackles are then placed on plaintiff and locked into position.  (Am. Compl. ¶ 68.)

> Defendants Cal Ludeman, Dennis Benson, Greg Carlson and Kevin Moser have and continue to violate plaintiff's rights to be free from Illegal Search and Seizure, Equal Protection, and Due Process under the United States Constitution Amendments 4,5,14. A violation of plaintiff's Fourth Amendment rights under the United States Constitution by forcing plaintiff to strip, be searched, be shackled, chained, cuffed and black boxed.

(Am. Compl. ¶ 4.)

This allegation alone fails to state a cause of action against any of the four Defendants named therein (Ludeman, Benson, Carlson, and Moser), because it does not describe any specific acts or omissions by any of them. It is alleged (albeit very obliquely), that Plaintiff was stripped, shackled, chained, cuffed, and black-boxed, but Plaintiff has not indicated when, where, or how that occurred. More importantly, Plaintiff has not described any specific *personal* misconduct by the Defendants listed in the above-quoted allegation. Thus, this Court finds that this allegation fails to state an actionable claim against Defendants Ludeman, Benson, Carlson, and Moser.

Furthermore, there are no other allegations anywhere else in the Amended Complaint that describe any acts or omissions by three of these four Defendants – Ludeman, Carlson, and Moser. Nothing in the Amended Complaint describes anything that those three Defendants personally did, or failed to do, that could cause them to be liable to Plaintiff under any legal theory. Thus, this Court finds

that Plaintiff has failed to plead any actionable claim for relief against Defendants Ludeman, Carlson, and Moser. This Court therefore recommends that those three Defendants should be dismissed from this action.

The Amended Complaint includes one additional allegation against Defendant Benson that must be considered. Plaintiff specifically alleges that Defendant Benson "imposed" the policy that caused him to be shackled and black boxed. (Am. Compl. ¶ 66.) Giving Plaintiff's pleading the benefit of liberal construction, this Court finds that Plaintiff has adequately alleged that Defendant Benson was personally responsible for one or more occasions when Plaintiff was shackled and black boxed.

In addition, this Court finds that Plaintiff has adequately alleged that Benson violated Plaintiff's constitutional rights by causing him to be shackled and black boxed. Defendants contend that Plaintiff has not stated an actionable § 1983 claim based on his allegations of being shackled and black boxed, because "[t]he use of such black boxes was explicitly upheld in the report and recommendation of Magistrate [now District Court Judge] Nelson and affirmed by the trial court in *Semler v. Ludeman*, No. 09-0732 [ADM/SRN], 2010 WL 145275, *26 (D. Minn. Jan. 8, 2010)." (Defs.' Mem. 10, n. 10.) However, *Semler* does not say that using shackles and black boxes on MSOP patients is always constitutional.

In *Semler*, the plaintiffs "acknowledge[d] that the black box policy was

'apparently imposed as part of a temporary response to an escape incident.'"
2010 WL 145275, at *27. The plaintiffs' complaint in *Semler* included a memo by
a MSOP official that explained the reason for the temporary use of the black-box
procedure. The procedure was upheld based on the MSOP rationale that was
presented in the complaint itself. Judge Nelson rejected the plaintiffs'
constitutional challenge to the black-box procedure, and concluded the following:

> Given the rationale for the use of restraints, deemed necessary for
> safety reasons in light of the growth of the MSOP program, and
> possibly in response to an escape attempt (see Complaint ¶ 65), it
> cannot be said that Defendants' actions are arbitrary or shocking to
> the conscience.

*Id*. at *27. Thus, *Semler* does not provide a blanket authorization for the use of
shackles and black boxes on MSOP patients; the Court only found that in light of
the rationale furnished by MSOP officials, which was set forth within the plaintiffs'
complaint, the use of such restraints was not unconstitutional under the
circumstances.

Judge Nelson added a footnote in *Semler* that highlighted the significance
of the detailed factual allegations and documentary materials that were included
in the complaint in that case. That footnote pointed out that *Semler* was
distinguishable from *Beaulieu* (*see supra* n. 4), which also challenged the use of
restraints on MSOP patients, because the complaint in *Beaulieu* (like the pleading
now before this Court), did not show any rationale for the use of the restraints.
The footnote in *Semler* stated –

The Court distinguishes this case from its decision in *Beaulieu*, 2008 WL 2498241 at * 14, where it was confined to the Complaint's allegations, which did not provide any reason or rationale for the policy. Here, because the MSOP's rationale for the use of restraints is found in exhibits attached to the Complaint (see Complaint, Ex. 11), the Court is able to conduct its analysis, concluding that Plaintiffs have failed to state a claim upon which relief can be granted.

*Semler*, 2010 WL 145275 at *27, n. 14.

As indicated by the footnote in *Semler*, the Court in *Beaulieu* denied a Rule

12(b)(6) challenge to a § 1983 claim based on the use of restraints against

MSOP patients. In *Beaulieu*, the Court concluded:

Assuming as true plaintiffs' allegations that defendants are implementing a blanket policy mandating handcuffing and shackling during transport of Annex residents [at MSOP], dismissal at this stage is premature. This Court cannot go outside of the Complaint to determine the extent of the restraints and if defendants have a valid rationale for this policy, factors which are necessary in ascertaining the policy's reasonableness . . . . In fact, this Court does not even have evidence of the alleged policy before it. As such, plaintiffs have adequately stated a Fourth Amendment claim related to defendants' use of shackles and handcuffs, and defendants motion to dismiss this claim should be denied.

*Beaulieu*, 2008 WL 2498241 at *14 (citation omitted).

Here, as in *Beaulieu* (and unlike *Semler*), the Amended Complaint itself

does not show any rationale for the restraint policy allegedly "imposed" by

Defendant Benson. Thus, the Court presently has no way to evaluate whether

the policy implements "reasonable" seizure procedures that comport with the

Fourth Amendment. It is likewise impossible to determine, based on the

Amended Complaint alone, whether the restraint policy allegedly applied to

Plaintiff is so arbitrary or shocking to the conscience that it constitutes a denial of substantive due process. *See Semler*, 2010 WL 145275 at *27 ("The substantive component of the Due Process Clause is violated by executive action only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'") (quoting *Collins v. Harker Heights*, 503 U.S. 115, 129 (1992)). Thus, this Court finds that Plaintiff has pleaded an actionable § 1983 claim against Defendant Benson, based on Benson's alleged imposition of a policy that allegedly has caused Plaintiff to be restrained by shackles, handcuffs, and a black box. Plaintiff has adequately pleaded that Defendant Benson's alleged restraint policy violates the Fourth Amendment's prohibition against unreasonable seizures, and the Fourteenth Amendment's substantive due process prohibition against governmental conduct that is arbitrary or shocking to the conscience.[6] It remains to be seen, however, whether Defendant Benson can adequately demonstrate that the restraint policy at issue is reasonable and rational (not arbitrary), on its face, and as applied to Plaintiff.

## C. Deliberate Indifference to Medical Needs

As previously noted, the bulk of Plaintiff's Amended Complaint pertains to

---

[6] It appears that Plaintiff might also be attempting to bring an equal-protection claim based on Benson's alleged restraint policy. If so, that claim must be rejected, because Plaintiff has not alleged any facts suggesting that he has been treated differently from other similarly situated MSOP patients. *See Klinger v. Dep't of Corrs.*, 31 F.3d 727, 731 (8th Cir. 1994) (stating that to sustain an equal-protection claim, plaintiff must show that he belongs to a group that has been treated less favorably than others who are "similarly situated").

the medical care he received at MSOP for the injuries that he allegedly sustained

from the transport-van accident.  Plaintiff claims that several named Defendants

violated his constitutional rights, because they were deliberately indifferent to his

serious medical needs.

Although the Amended Complaint includes numerous references to the

Eighth Amendment, that Amendment is not directly applicable here, because

Plaintiff is not presently incarcerated in a prison pursuant to a sentence imposed

in a criminal case.  However, the parties have correctly recognized that civilly

committed detainees, such as Plaintiff, have the same constitutional right to

adequate medical care as criminally convicted prisoners.  *Senty-Haugen v.

Goodno*, 462 F.3d 876, 889 (8th Cir. 2006).  This means that a civilly committed

detainee can seek relief under § 1983 against a state actor who has acted with

"deliberate indifference" to the detainee's "serious medical needs."  *Id*. (quoting

*Estelle v. Gamble*, 429 U.S. 97, 105 (1976)); *see also Boyd v. Knox*, 47 F.3d 966,

968 (8th Cir. 1995) ("A prison official exhibits deliberate indifference when the

official actually 'knows of and disregards' a prisoner's serious medical needs.")

(quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

As explained in *Senty-Haugen*:

> Deliberate indifference is a higher standard than gross negligence
> . . . . [A civilly committed detainee] must prove that officials knew
> about excessive risks to his health but disregarded them . . . and that
> their unconstitutional actions in fact caused his injuries.

462 F.3d at 890 (citations omitted).  The Eighth Circuit Court of Appeals has

further explained that –

> An Eighth Amendment claim that prison officials were deliberately
> indifferent to the medical needs of inmates involves both an objective
> and a subjective component . . . . The plaintiffs must demonstrate
> (1) that they suffered objectively serious medical needs and (2) that
> the prison officials actually knew of but deliberately disregarded
> those needs.

*Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citations omitted); *see
also Mays v. Rhodes*, 255 F.3d 644, 649 (8th Cir. 2001) ("Deliberate indifference
requires proof that [the prisoner-plaintiff] suffered objectively serious medical
needs and that the [defendants] actually knew of these needs but deliberately
disregarded them.").

A prisoner or civilly committed detainee cannot maintain a deliberate
indifference claim simply because he disagrees with his medical treatment. *See
Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) ("[M]ere disagreement with
treatment decisions does not rise to the level of a constitutional violation.'")
(quoting *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995)); *see
also Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990) (stating that a
prisoner's Eighth Amendment claims were properly dismissed on summary
judgment because they were based on "nothing more than mere disagreement
with the course of his medical treatment"). As the Court of Appeals explained in
*Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996):

> [N]othing in the Eighth Amendment prevents prison doctors from
> exercising their independent medical judgment. *White v. Farrier*, 849

F.2d 322, 327 (8th Cir. 1988). Prisoners do not have a constitutional right to any particular type of treatment. *See id.* at 327-28. Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment. *Taylor v. Turner*, 884 F.2d 1088, 1090 (8th Cir. 1989); *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994).

With these standards in mind, this Court has reviewed the numerous claims of deliberate indifference that Plaintiff has attempted to plead in his Amended Complaint. The Court finds that some of those claims can withstand Defendants' Rule 12(b)(6) motion to dismiss, but several of those claims should be dismissed.[7]

### (a) Actionable claims of deliberate indifference

This Court finds that Plaintiff has pleaded an actionable claim of deliberate indifference against Defendants Scott Sutton, Sharon Barney, Joel Korby, Mary Lind Schafer, and Sue Creager.

### (i) Defendant Scott Sutton

In paragraph 13 of the Amended Complaint, Plaintiff alleges that he informed Defendant Sutton that he was suffering a "splitting headache." Plaintiff

---

[7] Most of Plaintiff's allegations in support of his deliberate-indifference claim are either (a) conclusory, because they merely state a legal conclusion, without supporting facts (*see, e.g.*, ¶¶ 46, 47, 61, 62, and 64); (b) irrelevant, because they do not describe any serious medical needs, or any acts or omissions that could constitute deliberate indifference (*see, e.g.*, ¶¶ 9, 25, 27, 39, 42, 43, 49, and 55); (c) unspecific, because they do not pertain to any particular Defendant (*see, e.g.*, ¶¶ 15, 16, 21, 28, and 31); or (d) incomprehensible (*see, e.g.*, ¶¶ 23, 40, and 45). However, as discussed more fully below, this Court finds that at least some of Plaintiff's allegations arguably do support a colorable deliberate indifference claim against a certain Defendants.

allegedly described the "extent of the pain and suffering," and asked Defendant Sutton to "please help him," but Defendant Sutton allegedly never answered Plaintiff's request for help. Plaintiff further alleges that Defendant Sutton told him twice that he would not receive "any health care" or "any relief" unless he "applie[d] for medical assistance." (Am. Compl. ¶¶ 33, 35.)

On December 1, 2009, Plaintiff allegedly told Sutton that he (Plaintiff) was "not responding to the medication and shouldn't be expected to continue in so much pain," and Sutton allegedly responded by threatening to impose "sanctions and restrictions and isolation if plaintiff continues to ask for help." (*Id.* ¶¶ 37, 54, 65.) And on July 11, 2009, Plaintiff allegedly submitted a written request for help, which indicated that he wanted to see a doctor, because "his headache is a 10 out of 10 and it is affecting his vision, thoughts, sleep, attitude act." (*Id.* ¶ 59.) That request allegedly was forwarded to Defendant Sutton, but Plaintiff allegedly received no response. (*Id.*)

Based on the allegations presented at paragraphs 13, 33, 35, 37, 54, 59, and 65 of the Amended Complaint, and giving those allegations the benefit of liberal construction, this Court finds that Plaintiff has adequately alleged that Defendant Sutton was deliberately indifferent to Plaintiff's serious medical needs.

### (ii) Defendant Sharon Barney

Defendant Sharon Barney is identified as "the primary physician at

MSOP." In paragraph 24 of the Amended Complaint, Plaintiff alleges that on August 11, 2009, he told Defendant Barney about "his pain," and said that his "medication was not working." (*Id*. ¶ 24.) According to Plaintiff, Defendant Barney declined to offer any help to Plaintiff, and instead "cut off everything." (*Id*.) Liberally construed, this allegation suggests that Defendant Barney ignored Plaintiff's complaints of pain, and arbitrarily terminated all of his pain medications. Based solely on this interpretation of paragraph 24 of the Amended Complaint, this Court finds that Plaintiff has – however cursorily – pleaded a colorable deliberate indifference claim against Defendant Barney.[8]

### (iii) Joel Korby

Defendant Joel Korby is identified as a member of the health-care staff at MSOP. In paragraph 11 of the Amended Complaint, Plaintiff alleges that he woke up at 3:30 a.m. on July 7, 2009, with a "splitting headache" that he describes as "an emergency." He allegedly sought medical care, and Defendant Korby allegedly refused to help him. It could reasonably be inferred from this allegation (although it is by no means certain), that (a) Plaintiff was seeking assistance from Korby by for a serious medical need; (b) Korby was aware of

---

[8] In paragraph 44 of the Amended Complaint, Plaintiff alleges that Defendant Barney told him "to save $500.00 for a visit to a specialist." If that was Defendant Barney's sole response upon being presented with a serious need for medical attention, then it might support a deliberate indifference claim. However, the Amended Complaint does not describe the specific circumstances that precipitated Defendant Barney's alleged remark. Therefore, paragraph 44 does not show that Defendant Barney was deliberately indifferent to a serious medical need.

Plaintiff's need for assistance; and (c) Korby deliberately refused to help Plaintiff.

Paragraph 34 of the Amended Complaint also contains an allegation against Defendant Korby, which is somewhat similar to the incident described in paragraph 11. In paragraph 34, Plaintiff seems to be alleging that he told Defendant Korby that he "can't take it much longer," and Defendant Korby merely told him that he had already been "referred to Neurology." The allegations in paragraph 34 are extremely ambiguous. However, they could be interpreted to mean that Plaintiff told Korby he was in extreme pain, and Korby deliberately refused to offer him any meaningful medical assistance.

Another similar allegation is set forth in paragraph 50 of the Amended Complaint. There, Plaintiff alleges that he requested medical care on November 5, 2009, because of headaches he had "been having 24/7," and he could not "sustain the pain much longer." On that occasion too, Defendant Korby allegedly did nothing for Plaintiff except to inform him that "[y]ou have been referred to neurology for your headaches." (Am. Compl. ¶ 50.)

Based on the allegations presented in paragraphs 11, 34, and 50, this Court finds that Plaintiff has pleaded a deliberate indifference claim against Defendant Korby that can withstand Defendants' current Rule 12(b)(6) motion.

**(iv) Defendant Mary Lind Schafer**

Defendant Mary Lind Schafer is mentioned in paragraphs 11, 20, 49.5,[9]

and 56 of the Amended Complaint.  In paragraph 20, it is alleged that Defendant

Schafer suggested that Plaintiff should buy his own medications over the counter.

In paragraph 56, it is alleged that on June 23, 2009, Defendant Schafer

"documented" (presumably on some type of a medical report), that  "plaintiff was

seen for health concern for sore neck.  Advised to use hot and cold pack, use

Ibuprofen and gave excises [sic] to try, patient demonstrating ability to pull chin

on chest, but with difficulty."  The limited allegations in paragraphs 20 and 56 do

not describe any serious medical need, and they do not show that Defendant

Schafer treated Plaintiff with deliberate indifference.

In paragraph 11, however, Plaintiff alleges that Defendant Shafer, like

Defendant Korby, refused to offer him any medical assistance on July 7, 2009,

when he awoke with a "splitting headache" that he described as "an emergency."

Defendant Schafer allegedly did nothing for Plaintiff's self-described "emergency,"

but merely told him that "we are going to be moving to a different unit and this

may no longer be an issue."  Similar allegations against Defendant Schafer are

presented paragraph 49.5.  Giving those allegations the benefit of liberal

construction, this Court finds that Plaintiff has pleaded an actionable deliberate-

---

[9]  The Amended Complaint contains a paragraph numbered "5," which is between paragraph 49 and paragraph 50.  The Court will refer to that anomalous paragraph as "paragraph 49.5."

indifference claim against Defendant Schafer.

### (v) Sue Creager

Defendant Sue Creager is identified as another member of the MSOP health-care staff. Plaintiff alleges that on July 5, 2009, he informed Defendant Creager that he "couldn't see and his head [was] pounding." Plaintiff allegedly "pleaded with staff" for help, but Defendant Creager allegedly refused to offer Plaintiff any aid, and simply told him that "health services does not administer medications after 9:30 p.m." (*Id*. ¶¶ 9, 10, 49.5.) Based on these allegations, this Court finds that Plaintiff has pleaded an actionable deliberate-indifference claim against Defendant Creager.[10]

### (b) Inadequate claims of deliberate indifference

This Court finds that Plaintiff has failed to plead an actionable claim of deliberate indifference against Defendants Dr. David Paulson, James Olson, Marie Skalko, Kerri Anderson, and Connie Sells.[11]

### (i) Defendant Dr. David Paulson

Dr. David Paulson is identified as "the Medical Director of the Minnesota Sex Offender Program," and he allegedly is "in charge of overseeing the

---

[10] Defendant Creager is also mentioned in paragraphs 22, 25, and 29 of the Amended Complaint, but this Court finds no support for a deliberate-indifference claim against Defendant Creager in those other paragraphs.

[11] All of these Defendants, except for Dr. David Paulson, are identified as members of the Health Services Staff at MSOP.

employees in Health Services at both MSOP sites in Moose Lake and St. Peter."

He is mentioned in paragraphs 14, 18, and 69 of the Amended Complaint.

However, nothing in those paragraphs (or anywhere else in the Amended

Complaint), describes any specific act or omission by Defendant Paulson that

could reasonably be construed as deliberate indifference to Plaintiff's serious

medical needs. Plaintiff has pleaded only that Defendant Paulson was

"negligent" (Am. Compl. ¶ 14), that he supervised Defendant Sutton (*Id.* ¶ 18),

and that he "failed to provide plaintiff necessary medical attention" (*Id.* ¶ 69).

These conclusory allegations do not describe anything that Defendant Paulson

personally did, or failed to do, that could support an actionable deliberate-

indifference claim against him.

### (ii) Defendant James Olson

In paragraph 30 of the Amended Complaint, Plaintiff alleges the following:

Plaintiff request for a pillow dated 9-22-2009 over a month after
plaintiff asked. Plaintiff would like to know what kind of a place is
this? Plaintiff guesses it is clear when they deny a pillow that is
needed. This is the mentality of defendant James Olson RNS and
the therapeutic committee. Showing deliberate indifference of the
most basic health care in violation of the constitution.

Similar allegations are set forth in paragraphs 12 and 57 of the Amended

Complaint. These allegations do not describe any serious medical needs; they

do not show that Defendant Olson was deliberately indifferent to any serious

medical needs; and they do not show that Defendant Olson did anything that

caused or enhanced any injury to Plaintiff.  Simply put, Plaintiff has alleged no facts that could support a deliberate-indifference claim against Defendant Olson.

### (iii) Marie Skalko

Plaintiff's claims against Defendant Marie Skalko are based on the allegations presented at paragraphs 18, 19, and 48 of the Amended Complaint. In paragraph 18, Plaintiff simply alleges that he asked Defendant Skalko for some information about how to pay for his health care.  In paragraph 19, Plaintiff alleges that Defendant Skalko responded to some unexplained request by "saying the cost are [sic] being assessed by Mr. Sutton."  (Am. Compl. ¶ 19.)   In paragraph 48, Plaintiff alleges that his sister talked to Defendant Skalko about something, and Defendant Skalko allegedly assured the sister "that plaintiff would be treated if she had to see him herself."  (Am. Compl. ¶ 48.)  It is further alleged in paragraph 48 that "plaintiff has yet to meet defendant Skalko."  (*Id.*)

There are no allegations in the Amended Complaint that could support an actionable deliberate-indifference claim against Defendant Skalko.  Plaintiff has not alleged any facts showing that Defendant Skalko knew he had a specific ailment that could be a serious medical need, and that she deliberately ignored it.

### (iv) Kerri Anderson

In paragraph 5 of the Amended Complaint, Plaintiff alleges that on August 2, 2009, he was "rushed to" a hospital "after he had complained that he was passing out."  (Am. Compl. ¶ 5.)  It is further alleged that "Plaintiff was seen by a

doctor of which had been denied by MSOP health services Nurse Practitioner and defendant Kerri Anderson." (*Id.*) This brief and obscure allegation does not describe what, if anything, Defendant Anderson actually knew about Plaintiff's medical condition on August 2, 2009. Nor does paragraph 5 describe how Defendant Anderson actually responded to Plaintiff's condition – except to say that she somehow "denied" Plaintiff from being seen by a doctor. The allegations in paragraph 5 are plainly inadequate to state a deliberate-indifference claim against Defendant Anderson.

In paragraph 8, Plaintiff alleges that he asked to see a doctor on June 27, 2009, which was approximately five weeks before he allegedly was rushed to the hospital on August 2, 2009. In that request to see a doctor, Plaintiff allegedly complained that "his headaches are worse, the medication is very little help and that nobody has physically checked his neck and head." (Am. Compl. ¶ 8.) Defendant Anderson allegedly responded that "'there is no indication to refer to a physician or specialist.'" (*Id.*) The allegation in paragraph 8 is repeated in paragraph 51. The allegations in paragraphs 8 and 51 do not show that Plaintiff had any serious medical need, nor do those allegations show deliberate indifference by Defendant Anderson. At most, it appears that Defendant Anderson simply did not agree with Plaintiff's own subjective opinion that he needed to be seen by a doctor.

In paragraph 17, Plaintiff alleges that Defendant Anderson approved a "cut"

in Plaintiff's prescription for Ibuprofen. Again, it appears that Plaintiff simply disagrees with Defendant Anderson's evaluation of his need for Ibuprofen. Nothing in paragraph 17 shows that Plaintiff had a serious medical need to which Defendant Anderson was deliberately indifferent.

Paragraph 56 alleges only that Defendant Kerri Anderson recorded "'that Plaintiff may have a probable whiplash injury.'" (Am. Compl. ¶ 56.) That simple allegation does not describe any violation of Plaintiff's federal constitutional rights.

### (v) Connie Sells

Plaintiff's claim against Defendant Connie Sells is based on the allegations in paragraphs 23, 36, and 53 of the Amended Complaint. In paragraph 23, Plaintiff alleges that on August 2, 2009, he "informed staff that it is now a [sic] emergency." (Am. Compl. ¶ 23.) He allegedly asked for Ibuprofen and "to have a private doctor prescribe some relief." (*Id.*) Someone gave Plaintiff Ibuprofen, and Defendant Sells allegedly said "plaintiff cant [sic] have another doctor prescribe and only we will be prescribing." (*Id.*) This allegation does not show that Defendant Sells was aware that Plaintiff had a serious medical need, nor does it show that Defendant Sells was deliberately indifferent to any serious medical need. Plaintiff has merely alleged that Defendant Sells told him he could not have "another doctor" prescribing medications for him. That alleged statement will not support a deliberate-indifference claim against Defendant Sells.

Paragraph 36 of the Amended Complaint, in its entirety, states as follows:

> Plaintiff also submitted a health care concern on November 29,
> 2009, regarding the non-effectiveness of the medication and to see
> the Neurologist. Response was again to complete the insurance
> information by defendants Mr. Scott Sutton and RN, Connie Sells.

(Am. Compl. ¶ 36.) This allegation does not identify any objectively serious

medical need, nor does it show any deliberate indifference by Defendant Sells.

Paragraph 53 also refers to the "health care concern" that Plaintiff allegedly

submitted on November 29, 2009. Plaintiff again alleges that he requested "to

please expedite his referral to neurology, and that the medication that plaintiff

was taking was ineffective." (Am. Compl. ¶ 53.) Defendant Sells allegedly

responded to that request by telling Plaintiff: "You need to contact your Client

Rights Coordinator to apply for insurance." (*Id.*) The allegations in paragraph 53

do not show that Plaintiff had any serious medical need on November 29, 2009.

Furthermore, even if Plaintiff did have some serious medical need, the allegations

in paragraph 53 do not show that Defendant Sells was aware of it, and

deliberately disregarded it.

In sum, the Court finds that even with the benefit of liberal construction, the

facts alleged in Plaintiff's Amended Complaint do not support an actionable

§ 1983 deliberate-indifference claim against Defendants Paulson, Olson, Skalko,

Anderson, or Sells. The Amended Complaint does not describe any

circumstances when any of those Defendants knew that Plaintiff was suffering

from a serious medical need, and deliberately disregarded it. After carefully

considering the very limited allegations pertaining to Defendants Paulson, Olson, Skalko, Anderson, and Sells, this Court finds that Plaintiff has failed to plead an actionable § 1983 claim against any of them.

### D.  Medical-Malpractice Claims

Plaintiff's Amended Complaint includes several allegations that various Defendants were "negligent," because they failed to provide him proper medical care.  Those allegations understandably led Defendants to believe that Plaintiff is attempting to bring a common-law medical-malpractice cause of action in this case.

In Plaintiff's response to Defendants' motion to dismiss, he states that "Minnesota Courts do not recognize medical malpractice torts such as plaintiffs [sic], especially in his current situation being civilly committed to the Minnesota Sex Offender Program."  (Doc. No. 29, Pl.'s Resp. and Mem. of Law In Resp. to Defs.' Mot. to Dismiss ("Pl.'s Resp.") 4-5.)  This assertion seems to suggest that Plaintiff might be disavowing any attempt to bring a malpractice claim in this case. However, given the ambiguity of Plaintiff's submissions, this Court finds that it would be best to consider whether he has actually pleaded any actionable malpractice claim.  This Court concludes that he has not.

Plaintiff has failed to plead an actionable medical-malpractice claim in his Amended Complaint because he has not complied with Minn.Stat. § 145.682. That statute requires every plaintiff in a Minnesota medical-malpractice case to

furnish two affidavits in support of his or her claims.

> The first affidavit ("expert review affidavit") *must be submitted with the complaint* and state that before commencing the lawsuit, plaintiff's attorney reviewed the facts of the case with a medical expert who believed that at least one defendant named in the suit deviated from the applicable standard of care and thereby injured the plaintiff . . . . [12]

> The second affidavit ("expert disclosure affidavit") must be served upon the defendant within 180 days after commencement of the suit and identify each expert plaintiff intends to call at trial, disclose the substance of the facts and opinions to which the expert will testify, and provide a summary of the grounds for each opinion.

*Bellecourt v. United States*, 784 F. Supp. 623, 636 (D. Minn. 1992), *aff'd* 994 F.2d 427 (8th Cir. 1993), *cert. denied*, 510 U.S. 1109 (1994) (emphasis added) (citing Minn. Stat. § 145.682, subd. 2, subd. 3, and subd. 4).[13]  If a medical malpractice complainant fails to meet either one of the two affidavit requirements set forth in § 145.682, the statute provides for "mandatory dismissal."  Minn. Stat. § 145.682, subd. 6; *see also Stroud v. Hennepin Cnty. Med. Ctr.*, 556 N.W.2d 552, 555 (Minn. 1996); *Lindberg v. Health Partners, Inc.*, 599 N.W.2d 572, 577 (Minn. 1999).

---

[12]  If the plaintiff is not represented by counsel, the plaintiff must file his or her own affidavit of expert review in lieu of an attorney's affidavit.  Minn. Stat. § 145.682, subd. 5.

[13]  A plaintiff can be excused from the statutory-affidavit requirements if the defendant's liability can be established without any expert testimony.  Minn. Stat. § 145.682, subd. 2; *Bellecourt*, 784 F. Supp. at 637.  If, for example, a surgeon obviously amputated the wrong limb, expert testimony presumably would not be required to establish negligence.  In the present case, however, Plaintiff would need expert-witness testimony to prove any allegations that Defendants violated applicable medical-treatment standards.

The Minnesota Court of Appeals has summarized the statutory affidavit

requirements as follows:

> Minn. Stat. § 145.682, subd. 2 (2006) requires a plaintiff to provide
> two expert affidavits in an action alleging "malpractice, error,
> mistake, or failure to cure . . . against a health care provider." The
> first affidavit must be served with the summons and complaint. Minn.
> Stat. § 145.682, subd. 2. The second affidavit must be served within
> 180 days after the commencement of the litigation. *Id*. There are
> strict form requirements for these affidavits. *Id*., subds. 2, 3 (2006).
> The identification of experts to be called can also be provided in
> answers to interrogatories, so long as they are served within 180
> days of commencement of the suit and are signed by each expert
> identified. *Id*., subd. 4(a) (2006). *Failure to comply with the affidavit
> requirements results in mandatory dismissal of the claim with
> prejudice. Id.*, subd. 6 (2006).

*Cyrette v. Velcommen Village, Inc.*, No. A07-849, 2008 WL 853570, at *2 (Minn.

Ct. App. Apr. 1, 2008) (emphasis added). The requirements of § 145.682 are

also summarized in *Semler v. Finch*, No. A06-1178, 2007 WL 1976751 (Minn.

Ct. App. July 10, 2007), *rev. denied* (Sept. 18, 2007), a case cited by Plaintiff.

There, the Court stated the following:

> A plaintiff alleging malpractice against a health-care provider must
> also comply with statutory expert-review requirements when expert
> testimony is necessary to establish a prima facie case. Minn. Stat.
> § 145.682, subd. 2 (2006). The expert-review statute requires the
> plaintiff to serve an affidavit with the complaint stating that an expert
> has reviewed the facts of the case and is of the opinion that the
> defendant deviated from the standard of care and caused the plaintiff
> injury. *Id*., subds. 2, 3(a) (2006). The statute also provides that
> failure to serve this affidavit within sixty days of a demand results in
> mandatory dismissal with prejudice. *Id*., subd. 6(a) (2006).

*Id.* at *3.[14]

Here, Plaintiff has not complied with Minn.Stat. § 145.682, because his Amended Complaint is not accompanied by the expert-review affidavit that is required by § 145.682, subds. 2(1) and 3(a).  Therefore, Plaintiff's Amended Complaint fails to state an actionable malpractice claim.

### E.  Common-Law-Negligence Claim Against Defendant Eckert

Plaintiff is also attempting to bring a common-law-negligence claim against Defendant Alan Eckert.  Plaintiff alleges that on June 21, 2009, he was a passenger in a vehicle driven by Defendant Eckert, and he was injured when Eckert negligently caused the vehicle to collide with a pole.  (Am. Compl. ¶¶ 3, 63.)  Defendants do not presently deny that Plaintiff has pleaded a common-law-negligence claim against Defendant Eckert.  They only contend that the federal court should not exercise supplemental jurisdiction over Plaintiff's state-law-negligence claim, because Plaintiff has not pleaded any actionable federal claim that would permit supplemental jurisdiction.  (Defs.' Mem. 11.)

Because the Court has determined that Plaintiff has pleaded actionable federal claims that can survive the present Rule 12(b)(6) motion, Defendants'

---

[14]  Plaintiff appears to harbor the mistaken notion that the malpractice claim presented in *Semler* was dismissed because the claimant was a civilly committed sex offender.  However, *Semler* does not say that MSOP patients are precluded from bringing malpractice claims; it says that *nobody* can bring a medical-malpractice claim in Minnesota without satisfying the affidavit requirements prescribed by § 145.682.

rationale for dismissing Plaintiff's pendent state-law claims is unsustainable. It is still possible that Plaintiff's federal claims will be dismissed before trial (e.g., if Defendants were to successfully move for summary judgment on those claims), and it is also possible that Plaintiff's common-law negligence claim against Defendant Eckert may be dismissible based on other grounds that have not been raised in Defendants' present motion. But again, given this Court's current recommendation on Plaintiff's federal-law claims, Defendants' supplemental-jurisdiction argument is unavailing. Thus, this Court concludes that, at least for now, Plaintiff's common-law negligence claim against Defendant Eckert should not be dismissed.

### F. Claims Against Michael Tesneer and the Department of Human Services

There are two remaining matters that require brief consideration. First, the list of Defendants in the caption of Plaintiff's Amended Complaint includes the name "Michael Tesneer." However, as far as this Court can tell, Michael Tesneer is never mentioned anywhere in any of the substantive allegations of the Amended Complaint. In any event, Plaintiff has not described anything that Michael Tesneer did (or failed to do), that could cause him to be liable to Plaintiff under any cognizable legal theory. Thus, this Court concludes that Plaintiff has failed to plead any actionable claim against Michael Tesneer, and recommends

that Michael Tesneer be dismissed from this action.[15]

Second, the fourth page of the Amended Complaint includes a list of "parties" that seems to indicate Plaintiff intended sue the Minnesota Department of Human Services ("DHS"), even though the DHS is not listed as a Defendant in the caption of Plaintiff's pleading.  Assuming that Plaintiff is indeed attempting to sue the DHS, this Court concludes that the DHS should be dismissed from this action because it is immune from being sued in federal court.  The Eleventh Amendment provides that states and their agencies are immune from suit in federal court, unless the state has consented to be sued, or Congress has abrogated the state's immunity by some express statutory provision.  *Pugh v. Alabama*, 438 U.S. 781, 782 (1978) (*per curiam*); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66-67 (1989); *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Glick v. Henderson*, 855 F.2d 536, 540 (8th Cir. 1988). Plaintiff has not identified any applicable Congressional abrogation of the State's Eleventh Amendment immunity, and there is no indication that the DHS has waived its immunity and consented to be sued in this case.  Thus, the Court finds that the DHS is constitutionally immune from Plaintiff's present lawsuit.

---

[15] Because Plaintiff has applied for leave to proceed *in forma pauperis* ("IFP") in this case, his pleadings are subject to *sua sponte* review at any time.  28 U.S.C. § 1915(e)(2). Thus, Michael Tesneer can properly be dismissed from this action on the Court's own initiative.

## CONCLUSION

Based on the foregoing analysis, this Court reaches the following conclusions:

(1) Plaintiff has pleaded an actionable § 1983 claim against Defendants Dan Hilleren and Joan Fabian, based on the allegations that those Defendants caused Plaintiff to be "strip searched" in violation of his constitutional rights under the Fourth Amendment;

(2) Plaintiff has pleaded an actionable § 1983 claim against Defendant Dennis Benson, based on his allegations that Defendant Benson imposed a policy that caused him to be seized and restrained in violation of his constitutional rights under the Fourth and Fourteenth Amendments;

(3) Plaintiff has pleaded an actionable § 1983 claim against Defendants Scott Sutton, Sharon Barney, Joel Korby, Mary Lind Schafer, and Sue Creager, based on his allegations that those defendants were deliberately indifferent to his serious medical needs;

(4) Plaintiff has pleaded an actionable state-law-negligence claim against Defendant Alan Eckert;

(5) Plaintiff has failed to plead any actionable claim for relief against Defendants DHS, Cal Ludeman, Michael Tesneer, Gregg Carlson, Kevin Moser, Dr. David Paulson, James Olson, Marie Skalko, Kerri Anderson, and Connie Sells; and

(6) Plaintiff has failed to plead any actionable common-law medical-malpractice claim against any of the named Defendants.

## RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Defendants' Motion to Dismiss (Doc. No. 16), should be **GRANTED IN PART** and **DENIED IN PART**;

2. This action should be dismissed, in its entirety, as to Defendants Department of Human Services, Cal Ludeman, Michael Tesneer, Gregg Carlson, Kevin Moser, Dr. David Paulson, James Olson, Marie Skalko, Kerri Anderson, and Connie Sells;

3. All of Plaintiff's common-law medical-malpractice claims should be dismissed; and

4. Plaintiff's remaining claims against the remaining Defendants, namely Defendants Dennis Benson, Scott Sutton, Sharon Barney, Dan Hilleren, Joan Fabian, Alan Eckert, Joel Korby, Mary Lind Schafer, and Sue Creager, should not be dismissed at this time.

Date: January 18, 2011              s/ Jeffrey J. Keyes
                                     JEFFREY J. KEYES
                                     United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and

Recommendation by filing with the Clerk of Court, and serving all parties by **February 1, 2011**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within **fourteen days** after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.